UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA A. LESNIAK,

   Plaintiff,

               Case No.:  04-CV-74735-DT

vs.

               HON. GERALD E. ROSEN
               MAG. JUDGE WALLACE CAPEL, JR.

COMMISSIONER OF
SOCIAL SECURITY,

   Defendant,
_____/

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

**II. REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB] and supplemental security income [SSI]. Plaintiff signed her applications for DIB and SSI on February 28, 2002, alleging that she has been disabled and unable to work since September 27, 2001, due to "vocal cord paralysis [and] poor breathing." (TR 38-40, 41, 49 ). Benefits (both DIB and SSI) were denied initially on September 11, 2002. (TR 20-24, 226-29). A de novo hearing was held on June 9, 2004, before Administrative Law Judge [ALJ] Douglas Jones. (TR 230-61). In a decision dated August 9, 2004, the ALJ found

that Plaintiff could perform a limited range of sedentary work. (TR 12-19). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on September 30, 2004. (TR 4-6). The Plaintiff has commenced this action for judicial review.

### A.     **PLAINTIFF'S TESTIMONY**

Plaintiff testified that she lives at 9122 Sperry Avenue in St. Helen, Michigan, in a one story house without a basement. (TR 234). She explained that it is her parent's cabin and she does not pay rent, but does pay the other bills to live there. (TR 235-36). She stated that she has lived there for seventeen months, but prior to that she lived in Essexville while working in Bay City. (TR 235). She explained that she left after quitting her job due to disability. Id. She testified that she lives with her seven-year-old son, who goes to school. (TR 234-35).

Plaintiff testified that she finished high school in 1981 and received her diploma.[1] (TR 236). She stated that she was born on December 7, 1962, and is right-handed. Id. She reported that she weighs two hundred and twenty pounds. Id.

Plaintiff stated that she is not currently employed and last worked in January 2002, at Bay Regional Medical Center [BRMC] in the x-ray department full-time in Bay City. (TR 236-37, 241). She explained that after a total thyroidectomy surgery in September 2001, she went back to work for about nine days in January 2002, but stopped because she had a hard time breathing and was not able to get enough air. (TR 237, 241, 243-44). She stated that her doctor told her that she had to quit her job or have a tracheotomy put in permanently; thus, she quit. (TR 243). She explained that

---

[1] Although it was mentioned that there is some discrepancy as to the year Plaintiff graduated, she confirmed that it was in 1981. (TR 236).

she had an emergency tracheotomy with this first surgery. (TR 244). She explained that they had to put a hole in her throat to enable her to breathe. (TR 244-45).

She stated that prior to that she worked at BRMC for ten years as a transporter putting patients on a cart and pushing them. (TR 242-43). She stated that she had to help patients from wheel chairs onto the cart and was on her feet constantly. (TR 243). She stated that it involved a lot of pushing and lifting. Id. She testified that in July 2002 she had a second surgery, a laser cordotomy. (TR 244). She stated that she also had a tracheotomy with this surgery. Id.

She testified that she tried working as a cashier from July 2002 to September 2002, about six weeks, at Dan's IGA on a part-time basis, ranging from sixteen to thirty-two hours a week, but it was too strenuous for her and she stated that she could not handle it. (TR 241-42, 252). She stated that she thought she was paid about $5.80 an hour, and agreed that her total earnings were $677.00. (TR 252-53). She explained that the job required her to lift twenty to thirty pounds on a constant basis. (TR 242). She indicated that the additional $4,000.00 reflected as earnings in 2002 was a withdrawal from a 403K-B plan, plus a couple of days that she worked at the beginning of the year. (TR 253-54). She stated that she lived on this money until she started receiving Family Independent Agency [FIA] benefits. (TR 254).

Plaintiff testified that she has not done anything to earn money since January 2002, and she and her son are currently on Medicaid and food stamps from the FIA. (TR 237-38). She stated that she receives two hundred and fifty-two dollars a month in food stamps and three hundred and eighty-two dollars a month in cash benefits. (TR 238).

She testified that prior to working as a transporter, she was a cashier at K-Mart from July 1986 to December 1991, where she typically lifted in excess of fifty pounds. (TR 243-44). Plaintiff

stated that she worked as a prep cook in 1994 at General Restaurants, Inc. (TR 254-55). In 1995, she reported working for Mr. Hot Dog as a counter person. (TR 254). She stated that she did "everything," and that it was a fast food establishment. Id. Plaintiff also indicated that she worked at Long John Silvers and Subway. (TR 254-55). Further, she testified that she worked third shift at Saginaw Bay Plastics. (TR 255). She stated that she lifted fifteen to twenty pounds even when she was sitting and also when she had to move boxes. Id.

She stated that she did go to a vocational rehabilitation program after her doctor referred her, but she is no longer participating in same. (TR 237). She explained that she was evaluated by Linda Taylor, but was not offered any training and they were unable to find a job for her to do. Id.

She stated that she has a valid driver's license that expires December 7, 2007, which she renewed last year. (TR 238). She testified that she drives to pick up her son from school five days a week. Id. She explained that the bus picks him up in the morning and could drop him off after school, but she picks him up because most of her appointments are after school. (TR 239). She also testified that her ex-husband lives in Standish and she has to take her son there every other week. Id. Plaintiff testified that she has primary care physicians, Robert Segillion and Guy Sinkears, as well as a family nurse practitioner in Ross Common [sic]. Id. She stated that she also sees Dr. Stoddard every six months to check her TSH levels. Id. She stated that she had surgery on her vocal cords and esophagus two years prior to the hearing in July 2002. Id. She stated that she has not had any subsequent surgeries. Id. However, she stated that Dr. Hoygen in Ann Arbor had discussed further surgery in October 2002 to remove cartilage to allow better breathing, but the surgery could cause her voice to go lower or she could lose it completely. (TR 240, 245). She stated that she has

not seen him since that time. (TR 240). She stated that she would choose to breathe over keeping her voice, but there is some question over the insurance coverage for such a surgery. (TR 245-46).

She testified that her condition is currently stable, but it could get worse if she has surgery. (TR 251). She stated that although a tracheotomy would help her to breathe better, there is an increased risk of infection and disease with same because "[i]t has to be cleaned all the time." Id. She stated that her current condition is not the result of disease; rather, it is the result of the total thyroidectomy that "was supposed to remove goiters from [her] thyroid," but "resulted in the paralysis of the vocal cords and [her] breathing problem." (TR 251-52).

Plaintiff testified that she feels like she is breathing through a straw as described by her doctor. (TR 246). She stated that after her surgery in September 2001, she had more difficulty breathing. (TR 247). She explained that she has to sleep with two pillows to stay upright in order to breathe. Id. She explained that she cannot vacuum or make her bed without resting. Id. She indicated that she vacuums one room at a time and she has a neighbor cut her grass. Id. She testified that she cannot walk far, maybe fifteen feet and she has a hard time and has to stop. Id.

She stated that she gets "sick more easily now," and had her father install air conditioning at her home. (TR 247-48). She stated that she could not live without air conditioning and extreme cold also affects her ability to breathe. (TR 248). She explained that sprays and odors also affect her ability to breathe; and stated that on Memorial Day when they sprayed "Azfor" she had to go inside the house. Id. She stated that she was also at a campfire and had to leave because it, too, caused her difficulty breathing. Id. She stated when she lived in Bay City they would spray for mosquitos and she could not be outside because she got headaches and got sick. (TR 248-49). She explained that she gets headaches a lot and the doctors told her that her problems breathing are

related to same. (TR 249). She testified that she rests when she gets a headache almost every day three to five times a day for about thirty minutes to an hour. (TR 249-50).

Plaintiff testified that she recently started taking another medication, Azmacort. (TR 250). She explained that it is an inhaler that she uses three times a day, taking three puffs each time. Id. She stated that it helps her breathe by opening her airway; however, she has not yet been diagnosed with asthma. Id.

Plaintiff indicated that she would work if she could. Id. She testified that she misses work and also had to give up many activities and hobbies since her surgery in September 2001. Id. She indicated that she had to give up "[s]moking[,] [w]orking, walking, swimming, [and] helping [her] son coach T-ball." (TR 250-51). Plaintiff testified that she has not smoked cigarettes since September 26, 2001. (TR 241). She stated that she is only currently able to care for herself and the house. (TR 251).

### B.     MEDICAL EVIDENCE

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C.     VOCATIONAL EXPERT'S TESTIMONY

Stephanie Leech, a vocational expert [VE], testified at the hearing. (TR 256-59). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience possessed the residual functional capacity [RFC]

---

[2] See Subpart D, supra.

> to perform only sedentary work that involved only occasional pushing and pulling with the arms or occasional use of foot controls and only occasional bending at the waist or bending at the knees, or kneeling or crawling or climbing stairs and climbing ladders. All of those things would be done only occasionally. And which involved no exposure to dust, fumes, airborne pollutants, even strong odors in an environment where you either worked at a controlled indoor air, clean air environment, not a sterile environment, but just clean indoor air and/or could use a respirator to protect yourself from exposure to those air pollutants. There would be no exposure to very hot or very cold temperatures. No exposure to very humid or very wet working environments. And no need to communicate orally to receive oral communications without limitation, but would not be required to speak more than occasionally and then only in a very low, soft voice. Speaking just would be not a significant element to the job. And in that regard there wouldn't be, if there was interaction with coworkers or supervisors or the public, it would be, there would be no limitation other than this limitation on speaking. So if the interaction didn't require her to speak, then it would be fine. But if it did, then it would need to be limited so that it would occur no more than occasionally during the work day.

(TR 256-57). The VE testified that Plaintiff would not be capable of her past work with such restrictions. (TR 257). The VE testified that the principal limitation would be the lifting requirements. (TR 258). The VE testified that Plaintiff did not have any transferable skills. Id.

The ALJ then asked whether there was any unskilled work available with the given hypothetical. Id. The VE testified to the following positions: assembler, reduced range of 3,000 positions; packer, reduced range of 1,800 positions; sorter, reduced range of 1,500 positions; and visual inspector, reduced range of 1,000 positions. Id. The VE stated that the aforementioned was a representative sample. Id.

The ALJ then asked whether the added restriction of being "unable to complete a typical eight-hour work day with its typical coffee breaks and lunch break without needing to be away from the work site, to be off task and have the ability to rest, if only by being outside and sitting in their car so they can do nothing for up to 30 minutes during a work day," would change the ability to do

the listed jobs. Id. The VE stated that there were no jobs with the additional limitations. (TR 259). Plaintiff's counsel declined to question the VE. Id.

### D. ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "[t]he medical evidence documents the presence of impairments best described as: bilateral vocal cord paralysis with a reduced posterior glottic chink; hypothyroidism status post total thyroidectomy for goiter removal (September 2001; status post hysterectomy ( [sic] February 1998; and obesity." (TR 15). The ALJ found that although these impairments collectively are "severe," she does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. (TR 15, 18). The ALJ found Plaintiff's allegations regarding her limitations not totally credible . (TR 16, 18). He determined that Plaintiff had the RFC to perform a limited range of sedentary work. (TR 17, 18). Therefore, the ALJ concluded that Plaintiff is not eligible for DIB or SSI. (TR 19).

### E. ANALYSIS

Plaintiff advances two claims in her Motion for Summary Judgment. Her Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to properly evaluate her nonexertional breathing limitations;[3] (2) the ALJ failed to give controlling weight to Plaintiff's treating physician; and (3) the ALJ's hypothetical to the VE does not reflect the

---

[3]Plaintiff indicates "pain limitations" in her Table of Contents, but the substance of her arguments does not reflect same; rather, Plaintiff argues that the ALJ failed to properly evaluate her nonexertional "breathing limitations." Compare Plaintiff's Brief at pages i, 7-9.

record as whole.[4] In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[5] The matter is now ready for decision.

### 1. **Standard of Review**

The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

---

[4] Plaintiff's Motion for Summary Judgment and Brief filed June 6, 2005 (hereinafter "Plaintiff's Brief"), at pages 7-11.

[5] Defendant's Motion for Summary Judgment and Brief filed July 25, 2005 (hereinafter "Defendant's Brief"), at pages 8-16.

### a.   Nonexertional Breathing Limitations

Plaintiff argues that her "breathing limitations are severe and long enough to prevent sedentary employment."[6]  However, Plaintiff merely recites medical evidence and makes no argument.  Such a recitation is not a substitute for argument.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . . put flesh on its bones."  McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted).

### b.   Treating Physician

Plaintiff alleges that the ALJ did not give the proper weight to the opinion of her treating physician, James F. Stoddard, M.D.[7]  This Court is well aware that the medical opinions and diagnoses of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted.  King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984).

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.

Bankston v. Comm'r of Soc. Sec., 127 F.Supp.2d 820, 824 (E.D. Mich. 2000).  However, such deference is due only if the treating physician's opinion is based on sufficient medical data.  See 20 C.F.R. § 404.1529.  It is often misunderstood that the determination of disability is the prerogative

---

[6]Plaintiff's Brief at pages 7-9, 14.

[7]Plaintiff's Brief at pages 9-10.

of the Secretary, and not the treating physician. Kirk v. Sec'y Of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986); 20 C.F.R. § 404.1527. An ALJ may reject a physician's opinion when it is brief, conclusory, or not supported by medically acceptable clinical or laboratory diagnosis techniques. 20 C.F.R. § 404.1527(d)(2). Accordingly, treating physicians' opinions must be grounded on objective medical evidence, and no deference need be afforded those opinions if they are simply conclusory. Houston v. Sec'y of Health and Human Servs., 736 F.2d 365, 367 (6th Cir. 1984); Duncan, 801 F.2d at 855 (citing King, 742 F.2d at 973). In other words, the weight to be given a doctor's opinion by an ALJ will depend on the extent to which it is supported by "specific and complete clinical findings." Giddings v. Richardson, 480 F.2d 652, 656 (6th Cir. 1973). See also Cutlip v. Sec'y of Health and Human Servs., 25 F.3d 284, 287 (6th Cir. 1994) (citing Young v. Sec'y of Health & Human Servs., 925 F.2d 146, 151 (6th Cir.1990)).

On April 6, 2004, Dr. Stoddard noted that "if you ask [Plaintiff] to do anything that requires air exchange to any great degree, she can not do it because of the narrow larynx. She is still fighting Disability. . . . She is disabled in my opinion." (TR 206-07). On October 16, 2003, Dr. Stoddard stated that Plaintiff was "totally disabled." (TR 145). On May 8, 2003, he stated that "[i]t is my opinion that you are permanently and totally disabled because of the fact that you can not [sic] get enough air flow through the vocal cords to allow you to do anything that requires any physical activity what so ever." (TR 210). He also noted "permanent disability" on January 14, 2003, which was a change from his earlier disability finding on September 23, 2002. (TR 146-47). On September 23, 2002, he stated that she could perform "[a] sitting job in which there is no physical activity and no talking needed," and suggested that Plaintiff apply for disability. (TR 147, 212).

11

Additionally, Dr. Stoddard's earlier notes in February 2002, indicate that he thinks "it is important that we do every thing [sic] we can for her to try to get her back to work." (TR 155). In January 2002, he stated "there are no restrictions when she goes back to work." (TR 161).

The Regulations clearly state that, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). Nevertheless, if an ALJ does reject the opinion of a treating physician, he or she must give "good reasons" for doing so. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). In Wilson, the Sixth Circuit found that

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion. Id.

Wilson, 378 F.3d at 544. Further the court went on to find that, "[i]mportantly for this case, the regulation also contains a clear procedural requirement: 'We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.'" Wilson, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ did not state the weight he gave to Dr. Stoddard's medical opinion. Dr. Stoddard's treatment notes indicate that he thought her condition worsened over time, leading to a permanent disability. (TR 145-47, 155, 161, 206-07, 210, 212).

The ALJ noted some of Dr. Stoddard's findings, but not others. (TR 14-15). Although an ALJ is not required to discuss each and every piece of evidence, he or she "may not pick and choose the portions of a single report, relying on some and ignoring others, without offering some rationale for his decision." Young v. Comm'r of Soc. Sec., 351 F.Supp.2d 644, 649 (E.D.Mich. 2004).

12

Further, the ALJ noted that Dr. Stoddard is her treating otolaryngology physician, a specialist. (TR 14). As such, Dr. Stoddard's opinion is entitled to even greater weight. Wilson, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(5). Although Defendant argues that Dr. Stoddard's opinion "appear[s] to have been based primarily upon subjective complaints,"[8] this is contrary to the documented medical evidence of two specialists. (TR 98-120, 132-69, 195, 205-20).

Therefore, because the ALJ noted some of Dr. Stoddard's findings and not others, failed to discuss the weight given to Dr. Stoddard's findings as a whole, and neglected to even mention his opinion regarding complete disability, the ALJ's decision is not supported by substantial evidence.

### c.     Hypothetical

Plaintiff argues that the ALJ's RFC hypothetical failed to accurately portray Plaintiff's limitations under Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987).[9]

Recently, the Sixth Circuit has clarified what a hypothetical should include:

> In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. Foster, 279 F.3d at 356. In Varley v. Sec'y of Health and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted).

---

[8] Defendant's Brief at pages 10-11.

[9] Plaintiff's Brief at pages 10-11.

13

As in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

See also, Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 118-19 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." (citation omitted)).

Plaintiff argues that the ALJ failed to "include the breathing limitations as comprehensively as discussed in Dr. Stoddard's letters. (TR 256-57)."[10] This citation to the record is part of the hearing transcript which includes the ALJ's hypothetical, but does not cite to any of Dr. Stoddard's letters. Further, Dr. Stoddard's letters mostly indicate total disability; therefore, they would not necessarily "fit" into a hypothetical. Dr. Stoddard's earlier letters indicate "[a] sitting job in which there is no physical activity and no talking needed." (TR 147, 212).

The ALJ did incorporate various limitations regarding oral communication as well as limitations relating to shortness of breath, such as:

> no exposure to dust, fumes, airborne pollutants, even strong odors in an environment where you either worked at a controlled indoor air, clean air environment, not a sterile environment, but just clean indoor air and/or could use a respirator to protect yourself from exposure to those air pollutants [and] no exposure to very humid or very wet working environments.

(TR 256-57). The ALJ included the limitations he found credible, noting in his credibility finding that she has "'air hunger' with exertion and not at rest (Exhibit 9F3), the absence of more aggressive

---

[10]Plaintiff's Brief at pages 10-11.

treatment and the claimant's ordinary activities as she is self sufficient in caring [for] herself, her son and her home." (TR 16).

Plaintiff does not challenge the ALJ's credibility finding and fails to develop the argument further. Again, "[i]Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . .put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Therefore, Plaintiff's argument regarding an improper hypothetical is without merit.

### 2. Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Unfortunately, the ALJ's adverse decision was deprived of substantial evidentiary support because he failed to state the weight he afforded Plaintiff's treating physician and give good reasons for rejecting the doctor's finding of disability. However, as Defendant points out, after Plaintiff's second surgery, Dr. Stoddard noted that he received information from Dr. Hogikyan that "[h]er breathing is much improved."[11] (TR 214). However, this was eight months before Dr. Stoddard

---

[11]Defendant's Brief at page 11.

opined that she was "permanently and totally disabled." (TR 210). Defendant also questions Plaintiff's daily activity logs and argues that they are consistent with her RFC and inconsistent with Dr. Stoddard's opinion.[12] However, her daily activities could indicate as in Walston v. Gardner, 381 F.2d 580, 586 (6th Cir.1967), a situation where a Plaintiff "is disabled within the meaning of the Act, if he can engage in substantial activity only by enduring great pain," or in this case, only by enduring increasingly severe shortness of breath. In any event, there are factual questions left to be resolved. Thus, a remand for benefits would be premature.

## III. CONCLUSION

For the reasons stated, I recommend that the Court **GRANT** Plaintiff's Motion for Summary Judgment **IN PART**, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case for proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

---

[12]Defendant's Brief at pages 10-11.

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

S/Wallace Capel, Jr.  
**WALLACE CAPEL, JR.**  
**UNITED STATES MAGISTRATE JUDGE**

**Date:**   December 5, 2005

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Janet L. Parker, Assistant United States Attorney, 101 First Street, Suite 200, Flint, Michigan 48708.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Richard O. Leser, 916 Washington Avenue, Suite 309, Bay City, Michigan 48707-0835, and the Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

                                          s/James P. Peltier
                                          United States District Court
                                          Flint, Michigan 48502
                                          810-341-7850
                                          E-mail: pete_peltier@mied.uscourts.gov